The next case is People v. Ferris for the Appellant, Mr. Manson, and for the Appellant, Ms. Redwood, if you may proceed. Good morning, Horace. May it please the Court, Counsel. This case involves a state appeal of a suppression order by the trial court. The trial court made no credibility determinations that ruled as a matter of law that a police officer could not take the person's purse from the car. It said that everything had to be suppressed as a fruit of that illegal search. The problem arises is that the defendant had no right of privacy as to that purse, and you cannot argue somebody else's interference with somebody else's legal rights as a basis for the suppression of evidence as to you. So regardless of whether or not the trial court was right on that ruling, the defendant simply has no basis for suppression, because it has to be your own personal individual rights that have been infringed before there can be a suppression of evidence. And in this case, the only legality found by the court was taking the purse from the car. The defendant had no right to that purse, no interest in that purse, no standing as to that purse. So he cannot say that his rights were violated and that everything else was there for the fruit of the poisonous tree doctrine. As far as the trial court's ruling, I think if you want to get to the trial court's ruling, he was wrong. The police officer's action in this case of having the car towed from the scene was perfectly reasonable and logical. You have a car with Gretchen, who has no license, Mindy, who has no license, and the defendant, who is under the influence of marijuana. You have a car parked in the middle of the road, out in the middle of the country, nowhere near anything. The officer has three choices. He can wait at the scene until somebody can pick up the defendant and Mindy, which is unreasonable. Even if they tried that, but they couldn't contact somebody. They can have the car towed, as the defendant himself suggested, or they could leave the car parked there in the middle of nowhere. And I think the decision to tow was perfectly reasonable, and as part of that towing procedure, an inventory of the car, including the purse, would be legal. And removing the purse as part of the inventory would be legal under Manozzi and Noga, which was decided by this court, which approved the removal of a briefcase from the car as part of the inventory. Well, the two people that had a possessory interest in the car, or arguably, one the owner and then the one to whom she turned over apparently controlled the car, if they both are desirous of having the car towed, independent of the police desire to have the car towed, why isn't that the first choice? And if that's the first choice, then the police don't have to inventory anything, and the police don't have to deal with items of personal thief that are in the car. Well, again, the problem that arises is that the trial court did not rule that you can't tow the car, or that you can't take the purse from the car. And since the defendant has no right to the purse, it doesn't matter if that was illegal, because there's no illegality as to the defendant which would require suppression of the evidence. And I think that even in the case where the defendant suggests that the car be towed, I think the officer would be well within his rights and be smart to tow the car, to inventory the car before, because even if the defendant requests you to tow it, they can still claim, hey, it was towed, there was something in the car before it was towed, it was lost, you guys are responsible for it. How does that follow? Well, even if the police make the call, assisting citizens by the side of the road, they can call the same tow company that they use. And they can even wait at the scene if it's a caretaking function. And what this was in this case, it was not an investigatory one. It was a situation where the officer really had no choice but to have the car towed from the scene. He can't wait there forever until somebody can come pick up the defendant. They tried that. They couldn't get a hold of anybody. They can't drive away leaving the defendant at the scene in the car, because as soon as you disappear, either the defendant who's under the influence, or Mindy who has no license is likely to drive away. You started off with the wait there forever. How long is the wait different than the wait that they call to have it towed? The evidence showed that they were not able to get a hold of somebody to come get them, to go get their car out of the towing until, what was it, about five, six hours, as opposed to a matter of hours, a matter of hour, I think, at the scene as far as having the tow truck come. The people that they could get a hold of to get the time that they called, he was called, yeah, they called the friend at 1 a.m. He was not able to get there to 6 a.m. to stop it. Where would the get there be? Get there to where? It was to get to Sullivan, to the police station where the defendant had been taken to. What does that have to do with the towing? Well, you're asking about how long would they have to wait? Well, they wouldn't have to wait at the scene. They could, I mean, is that okay to transport citizens? Certainly. They could take them to the jail as citizens, and the car could be towed by whoever the police were going to have towed, except that it would be taken to the lot, and it would be available the next morning when the friend got there, and they could go to the lot and take it home. As long as they get there during business hours, which the defendants did not do, when they went to pick up the car, it was before the towing lot was open for business that day. Well, but by then they would have already removed whatever personal items in the car that they thought were important to them. The tow truck driver would have let them do that. Well, again, the decision of the trial court doesn't go into any of this as to whether or not there should be a tow or whether there could be an inventory search of the car prior to the tow. The trial court's sole ruling was you can't take the personal of the car without the specific request of the driver, Gretchen. And because you took the personal of the car, everything else is invalid. As to Gretchen, maybe she might have an argument, but the defendant has none because his privacy rights are simply not violated by the seizure of that purse. So regardless if it was legal or illegal, that does not provide any basis for suppression of the evidence. Why would Gretchen have an argument? She was being arrested, wasn't she? Well, she would have the argument as to her refusal of consent, her testimony that I told him to leave that personal of the car. I do not want to take it from him. Too bad. If you're arrested, what's wrong with a search incident to arrest? Didn't our Supreme Court just decide the Cregan case that came out of our district? Yes, it did. How is this different? It's different because at the time the purse was taken, Gretchen is in the back of the police car. This isn't a Terry stop. This is an arrest, right? Correct. And her purse is on the floorboard of the car and she was driving. Correct. The purse is her personal item, right? Correct. I'm just saying that even if she had an argument, it doesn't matter. And I don't think she does have. I think you're right, Justice Cook, that she doesn't have an argument that the seizure of the purse is illegal or any search of the purse is illegal. And that is the sole basis upon which the trial court ruled. And quite simply, the defendant has to use the phrase they no longer use, that he doesn't have standing to claim that everything else goes out under the fruit of the poisonous tree because his rights were never violated by the alleged original illegality. Thank you, Your Honor. Thank you. Thank you, counsel. May I please court and counsel? I represent Dustin Ferris. And first of all, to answer the state's argument that there was no basis for the suppression, the only illegality is the purse, therefore this court can't touch the other issues, that's incorrect. This review is de novo. Therefore, any basis that was argued below can be reached by the court. Judge Flannel's opinion stated, with respect to both defendants, Biddle and Ferris, the only justification for the ultimate hold on the impounded vehicle and its subsequent search pursuant to the warrant were the articles discovered during the inventory search of the purse. Therefore, the hold on the vehicle was improper and unjustified. And the results of the search pursuant to the warrant must be suppressed. He holds that the hold on the vehicle was improper and unjustified, and that is correct. The hold on the vehicle was an entirely separate and different search than the taking of the purse. The state didn't make any argument below that this was a community caretaking function either. So I would respectfully suggest that that is something that's just coming up now in oral argument. Didn't the record show that the car was parked partially in the road? The car was parked partially in the road. At the suppression hearing, Judge Flannel asked the officer, why didn't you just have him pull it off to the shoulder or push it over? And he said, no reason. Well, nobody was fit to drive. Two people didn't have driver's license and one person was under the influence. So how can he ask any of those people to pull the car off the road? I would submit that he could ask somebody to pull the car off the road as he stood there and watched. Or immediately when he stopped Gretchen before he knew whether she had a license, he could have come up and said, look, miss, would you pull the car all the way on the shoulder so we're not blocking the highway? And Dustin Ferris also testified he's a big, strong guy. He could have pushed that car onto the shoulder. That car should have stayed right there on the shoulder where it was because it wasn't subject to impoundment. It was properly licensed. It had nothing wrong with it. And the owner of the car was with it, indicated she was calling friends to come and get her and get the car and call a licensed driver. She wanted to stay with the car. They could sit in the car in February with the heater on, engine running, outside. No danger to them. They're adults. Do you think that would have been reasonable for a police officer to leave an unlicensed driver and a person under the influence with the keys to a vehicle on the side of the road? Sure, if that's what they wanted to do. The police don't have any right to stop somebody before committing a crime. There was no indication they were going to commit a crime. The only indication is they were going to sit there and wait for their friends. They had called the friends. So he can't anticipate. Well, your client had already been driving the vehicle. He had been driving the vehicle. And the driver who was stopped didn't have a driver's license. Correct. So there was indication that the people in the vehicle were willing to commit crimes. I don't believe that the police officer can tow the car in anticipation of a crime that has not yet been committed. There's nothing in the law that says that a police officer can come around and say, I believe that you're about to drive this car, so I'm going to have it towed. But are you saying there's something wrong with a police officer who comes upon us, makes a traffic stop, the car's parked partway in the road, nobody's fit to drive the car, he's not allowed to call a tow truck? No, I didn't say that. He's not allowed to. The tow is a private tow, if anything. He had no reason to impound the car. Towing it? Well, they didn't impound it until they found the evidence in the purse, right? It was after they found the evidence they called the tow truck company and said, don't let the car tow. That was the hold. Because the tow, he released it to the tow company at the scene. He conducted, contrary to what the state argues in their brief, the initial inventory search was conducted right there at the scene on the side of the road. And then the tow report states very clearly, car's released to green towing. Now, once it's released, the hold on the car is in another seizure of that vehicle. And that's the illegal seizure here. Was it based on the purse? Yeah, it was based on the purse. Should it have been based on the purse? No. There's no reason to believe that because Gretchen had drugs in her purse, that there was some kind of other drugs in the car with the other people. So both the other people were searched. Well, they got the search warrant, didn't they? Only after the hold. They didn't get a search warrant for the hold. And that's what they needed. And that's what the Supreme Court said in Chambers v. Moroney. There's no difference between putting a hold on it or doing a search without a warrant. So basically what the Supreme Court says is that Deputy Smith did a search without a warrant. When he placed that hold on the car and he called the tow company and told them, you can't release that car to Mindy even if she comes there with the money. Mindy came there with the money, with a licensed driver. She called Greene and Greene said, no, they've got a hold on the car. And indeed, Deputy Smith agreed and admitted that he had placed his hold on the car and he had no probable cause to do that. He couldn't do it. It's a search. The Supreme Court said so. And this court can find on that basis that the hold was an illegal hold on the car. The state challenges that Mr. Ferris had standing or a legitimate expectation of privacy in the vehicle. That's judged by the factors. Did the defendant exhibit conduct that he had a subjective interest of privacy in the car? And the second one, is that expectation of privacy something that is reasonable? In other words, do we as a society protect that? First of all, and there are six factors. Did he have an ownership or possessory interest? He did not have an ownership interest. He had a possessory interest as the only licensed driver and the person who had been driving for the majority of the day. He was given the keys by Mindy who agreed to give him the keys, asked him indeed to do the driving for her. She also allowed him to use the trunk to store his possessions. Did he have a right or ability to exclude others? Indeed, she turned the trunk over to Mindy and to Gretchen to put their belongings. They were planning to stay in Decatur for a while. They loaded up their clothing, their toiletries, their other personal objects into the trunk of the car, locked the trunk of the car and thereby excluding others from the use of the trunk of the car. Indeed, the deputy talked to Mindy and she testified that, she told him rather that she had nothing in the trunk of the car. Everything in the trunk belonged to Mindy and Dustin. Did he exhibit an expectation of privacy? Yes, he did. He refused consent to search the vehicle. Indeed, all three of the people who were stopped refused consent of the search of the vehicle. That right there is an expectation of privacy that's exhibited. He locked the trunk. That's an expectation of privacy. And then the items of contraband that were eventually found in the trunk, he hid them up in the back of the trunk behind clothing. He hid them so well to exhibit his expectation of privacy that during the inventory search, Deputy Smith didn't find or note anywhere on his record that he suspected any kind of contraband in the trunk. He wrote that he found clothing, a bag, other things like that in the trunk, but no suspicion at that point in time of the inventory search of any contraband. Did he have prior use of the area or the property? He testified at hearing, and this is where the state said he didn't claim ownership, that's wrong, he did claim ownership of the property containing the contraband at the hearing. He had prior use of it. He put his items in the trunk in the morning. He unloaded them at Decatur. Mindy told the officer that when she tried to pick up this knapsack, that Dustin took it away from her. It wasn't hers. It was his. Very clearly she was distancing herself from any possession of that knapsack or the items in the trunk.  Put him up toward the back seat, covered him with clothing, locked the trunk. That's prior use of the area or property. Was he legitimately present at the place? Yes, he was legitimately present in the car at all times because he was given the permission and indeed asked by Mindy to do the driving of the car and given the keys by her. There's no dissent on that. Did he take normal precautions to protect his privacy interests? And again, that's hiding the things that he wanted protected in the back behind the clothing. So he had a legitimate expectation of privacy in the car, although it was not his car. It doesn't have to be his car. I cited the cases where passengers have a reasonable expectation of privacy when they're not a mere passenger, but when they're a passenger who stores their personal possessions in the vehicle, and that's what he was. All three of the people refused consent to search. Now the purse. Under Florida v. Wells, the Supreme Court forbids the police from using an inventory search as a ruse for general rummaging to discover incriminating evidence. That's exactly what was done here. If you read through the police report, if you look at the video, Deputy Smith definitely had some kind of an agenda. He continuously mentions that the pupils were tiny. He has an indication in his mind, he has a hunch, that there might be drugs. Okay, their pupils were tiny, but we all know that the fact of being on drugs does not indicate that you have drugs in your possession, and the fact of being on drugs is not in and of itself a crime. If they were on drugs, there has to be something else independent to raise probable cause to do the search. The purse. There was no consent to take the purse. Now the testimony was contradictory that Gretchen told Officer Smith, don't take my purse. She said she told him several times. Dusty heard her say, don't take my purse, leave it with my friends. She didn't want her purse. She didn't need it for obvious reasons. Interestingly enough, at the point where Deputy Smith is privately talking with Gretchen in the car, he turned off the video. And that should be noted. I've got it in my brief at the place. He turns off the video at two different times. I'm sorry, not the video, the audio. He turns off the audio at the time when he's talking to Gretchen in the car. And that could have been the place where she said, don't take my purse, leave it. In any case, there was no consent to take the purse. There was no departmental policy. Now this is important because he was doing an inventory search. He went in the car. He looked through it. He says that he took the purse pursuant to the inventory search. But there has to be a departmental policy. There was no departmental policy entered into the record. It doesn't have to be entered into the record. As we know, the Supreme Court said that testimony about the department policy is enough. There was no testimony about the departmental policy, neither was this brought out by the state's attorney on the case. The policy to take a woman's purse is purely a private policy by Deputy Smith. I always do it because there's things that she might need. And how is his hunch or his agenda shown? You think she might have needed her shoes on February? You saw her out there and you mentioned to her, can you do these field sobriety tests in your stocking feet? Yes, I can. He knew she had no shoes. It was February. It was cold. It wasn't snowy, but it was real cold out. And he didn't think she might need her shoes when she gets out of jail, just that she might need her purse. Why? He had an agenda. He had no authority to seize the purse. Okay, why not pursuant to a search incident to arrest? Once she's in the police car and she's handcuffed, there's no search incident to arrest. It's necessary because there was no possibility that there would be evidence of either speeding or driving on a revoked license in the car. My understanding of a search incident to arrest is that the person can be searched as well as their personal effect, like a purse, without regard to what you've just mentioned. And that's different than the search of the place or surrounding area incident to arrest. She didn't have the purse on her when she was arrested. Right, but the fact that she steps out of the car and doesn't grab her purse but it's on the floorboard where she was sitting when she was arrested, what difference does that make? I believe the difference comes under Arizona v. Gant that says you can't search inside of the car for evidence of the crime once the person's already handcuffed and in the car, which she was. She was handcuffed. She had been in the car for quite a while, and there was no reason to search the purse for any evidence of the crime. All of the evidence was there already. It was the fact that she didn't have a license, and it was the fact that she was speeding. So there wouldn't be any evidence. Did you have a chance to read the Cregan decision that came down last week or the week before? No, but I'll make note of it because I'm sure it's important to me. This case is also distinguished from the state's case, People v. Frias. In Frias, the purse that the girlfriend had contained the contraband that Mr. Frias was arrested for. In this case, Mr. Ferris was not arrested nor charged with any of the  That was Gretchen's burden totally. Mr. Ferris was charged with the contraband that was found in the trunk of the car after the illegal hold on the car and then the resulting search warrant. The hold on the car in and of itself was an illegal seizure of the car and the contents to which Ferris had a privacy interest. Under Vermeula, this case is on all fours. The defendant requested a tow. The vehicle was towed to a private tow lot, just like in this, and the police released the vehicle to the towing company. That's exactly what Deputy Smith did. He released it. I've got a copy of that release in my brief in the appendix. Those are the magic words. The car was released. Once the police released custody, the court said, that's it. They no longer have any custodial interest in the vehicle. Then in Vermeula, the police went back without a warrant and they searched the car and found a little bit of contraband, which resulted in a bigger search of the car, finding the bigger amount of contraband. This is exactly what the Supreme Court held was unconstitutional in Chambers v. Maroney. What were the two cases you said? You're saying Vermeula? Vermeula. Is that B-U-R-M-I-L-L-A? M-I-L-A. Okay. It's People X-Rel Vermeula v. 1987 Cadillac with a VIN number. I have that in my brief. That's a case on all fours. Was there another case that you said before that? Chambers v. Maroney. Not Chambers, no. I know Chambers. Okay. Maybe you were talking about Vermeula. Vermeula, yeah. Okay, so the hold here just like in Vermeula was an illegal hold, and that was an illegal seizure of the car. A seven-hour hold of this car is unprecedented. I searched and I couldn't find anything saying you can hold a car for seven hours while you wait for a drug-sniffing dog. Mindy, by that time, her friends had come to Sullivan. They had the money for the tow. The tow company guy, they found the tow company guy and talked to him personally. He didn't say, I can't release it to you because I'm not open for business. He said, I can't release it to you because the police have a hold on it. Mindy called the police, and Deputy Smith even recites in his report, she called several times saying she was there with the money for the tow and a friend to drive it, but he refused to release the car to her because he had a hold on it. Smith needed a warrant for the hold. Now, there's no logical nexus between the drugs in Gretchen's purse and holding a car for a dog sniff. It was just merely a hunch. He needed a warrant to put the hold on the car. Smith had an agenda. He had a hunch, he had an agenda. The indicators were that he turned off the audio at critical times, that the purse, he says he took the purse for Gretchen's benefit, but he didn't bring the shoes for Gretchen's benefit.  But he failed to ask the other occupants if there was anything they needed before the tow out of the car for their benefit. So clearly he wasn't thinking about the benefit of the people here. He was thinking about getting that car and figuring out how to get a search of it. There was no probable cause for the hold, and there was no attempt to even get a warrant to put a hold on it. He could have at that time gone to a magistrate and said, look, I've got this purse with contraband in it. I have these people who have tiny pupils. I stopped them in the middle of the night. I want a warrant to put a hold on the car. That's all he had to do. And he skipped that step for expediency. And he can't do that. The police cannot run in and run around the Fourth Amendment merely for the expediency of police purposes. But if he had done that, wouldn't you argue that the taking of the purse out of the car initially was the mistake they made anyway? Sure. And I still do. I agree that's true. But if he had taken that step, then this hold on the car would not have been an issue here. But why didn't he seek a warrant? It's pretty clear he would not have got a warrant on those facts. And that's why he didn't do it. Now in the state's reply brief, they argue that the court can't consider alternative theories. That's wrong. This court can't review the case de novo. All of these issues were argued below. So the court can consider them. The state argued at page 5 of their reply brief that since Ferris suggested the tow, he should be barred from challenging it. And they cited People v. Fleming. Fleming is a case where there was a consent to search, not asking to tow a car. Ferris was saying, hey, we have to tow the car. I don't think he said you have to tow the car. He could have been saying we want to get a private tow of the car. Time is up. If there are no other questions. Thank you. Rebuttal. Your Honors. Again, the whole thing hinges upon whether the police officer, according to the trial court, everything hinges on taking the purse of the car. The defendant's rights were not violated. So there is no illegality. There's no further poisoning of the street. All this argument about the illegal search of the purse, the illegal hold on the car, just doesn't come into play because the defendant's rights were not violated by the initial illegality, which was the seizure and search of the purse. And as far as the hold on the car, I submit that that was, in fact, proper under, let's see, in the cases cited in my brief of Illinois v. MacArthur, United States v. Van Wellen, and the People v. Cradleville. In each of those cases they said a temporary hold on a dwelling or package while a search warrant was sought was proper. Did anybody seek a search warrant here? They did seek, they sought, they got, in fact, got the search warrant. The hold was put on, apparently the hold was put on the car around 3 a.m. after the drugs were found on the car, I think which would give probable cause at that point to search the car based on the conduct of the people at the scene, the fact that the drugs in the purse, that would give reasonable belief that there was drugs in the car. But instead of getting a warrant, he got a police dog to walk around the car. The police dog arrived about 8 a.m., which was about the same time as the defendant arrives at the tow lot to try to pick up the car. And at that point the dog alerts the car, showing, saying that there's drugs there, and then they get a warrant based on the alerts by the dog and everything else that had gone before. And that is what distinguishes this case from Bermuda, cited by the defendant. In that case, the police had conducted an inventory at the scene, then went back to the impound lot and conducted a second inventory search. And the court said no, that second inventory search was improper because at that point the officers had no custodial interest in the car. In this case, we don't have a second inventory search. We have a search with a warrant, which I think is a clear distinction that says that Bermuda does not apply in this particular instance. And I think that under the circumstances of this case, the police officer's decision to have the car towed, to have the purse removed, and there is no evidence of a ruse. And the case law is clear that even if there is a ruse, it doesn't matter because you can still do the inventory, you can still do the inventory of the property, even if there is a secondary, something secondary in the officer's mind as to why he might be doing this. So I think that the Todd Court's decision was completely incorrect. It should be reversed in this court because the defendant's rights were never violated by any illegality towards the purse, which is the only illegality filed by the courts. And setting that aside, everything that was done as regards to the car was legal and proper, and so there would be no independent basis for this court to go beyond the trial court's ruling to say, hey, even though the court was wrong on this, he could have suppressed on this basis instead. Thank you very much. Thank you. We'll take this matter under advisement and stand in recess until the readiness of the next case.